UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **FATEMA AKTER**, <br><br> Plaintiff, <br><br> v. <br><br> **MARCO RUBIO**, *in his official capacity as Secretary of State, et al.*, <br><br> Defendants. | Case No. 1:24-cv-03256 (TNM) |

### MEMORANDUM OPINION

Plaintiff asks the Court to compel the Department of State and various federal officials to schedule her visa interview. Essentially: Her petition for an alien relative visa waits in a chronological queue for adjudication, and she wants this Court to escort her to the front of the line. The Government moves to dismiss, arguing that the Court lacks jurisdiction over the action because Plaintiff has not alleged that the Government failed to take a required ministerial duty. It also insists that she has failed to plausibly claim that her visa adjudication has been unreasonably delayed.

The Court will grant the motion to dismiss. Whether Plaintiff has plausibly alleged a violation of a non-discretionary duty is uncertain. Regardless, she has not alleged unreasonable delay. So the Court dismisses on those grounds, as it is prudent to avoid tricky questions of *statutory* jurisdiction where a finding on the merits is straightforward.

### I.

Plaintiff Fatema Akter is a national of the People's Republic of Bangladesh. Compl., ECF No. 1, Part V ¶ 1. Her sister is a citizen of the United States. *Id.* The sisters are in the middle of their attempt to obtain an immigrant visa for Akter. Compl. Part V ¶¶ 2–9. The

process started with Akter's sister filing a Form I-130, Petition for Alien Relative, with the U.S. Citizen and Immigration Services ("USCIS"). Compl. Part V ¶ 2; *see* 8 U.S.C. §§ 1153(a), 1153(f), 1154(a)(1), 1151(b)(2)(A)(i); 8 C.F.R. § 204.1(a)(1). USCIS approved the petition and forwarded it to the Department of State's National Visa Center for pre-processing. Compl. Part V. ¶ 3; 8 U.S.C. § 1202; 8 C.F.R. §§ 204.1(a).

At that point, the National Visa Center began to gather the required documents and collect the necessary fees. Compl. Part V ¶ 6; *see* Dep't of State Bureau of Consular Affairs, *Immigrant Visa Process: Step 2: Begin National Visa Center Processing*, https://perma.cc/QN2K-JTD7. Once those boxes are checked, the petition is considered documentarily complete. Compl. Part V ¶ 7; 9 Foreign Affairs Manual ("FAM") 504.4-5. The National Visa Center notified Akter her case was documentarily complete in October 2023. Compl. Part V ¶ 7.

The next step is for the National Visa Center to schedule Akter for an immigrant visa interview before a consular officer so she can make and execute a visa application. 9 FAM 504.4-6. Interviews are scheduled "in the chronological order of the documentarily complete applicant" based "[u]pon visa availability" at the relevant embassy or consulate. 9 FAM 504.4-6.

This obviously takes time. The allocation of consular services is complex, and many like Akter are waiting their turns to be admitted, many of whom like her wish to be reunited with their families. After a delay of 13 months, Akter still had not been scheduled for a visa interview. Compl. Part V ¶ 11. So she filed this suit, seeking to "[c]ompel Defendants . . . to take all appropriate action to schedule an interview and adjudicate [her] documentarily completed I-130-based F-4 family immigration visa application, without further delay." Compl.

at 12.  Her claims are rooted in the Mandamus Act, 28 U.S.C. § 1361, and the Administrative Procedure Act, 5 U.S.C. § 706(1).  Compl. Part IV ¶¶ 22–23.

The Government[1] moves to dismiss.  Mot. Dismiss, ECF No. 9.  It argues that the Court lacks jurisdiction over Akter's suit because she has not identified a non-discretionary, discrete agency action that a consular officer failed to take.  Mot. Dismiss 6–19.  Alternatively, it argues that Akter has failed to state a claim of unreasonable delay on the merits.  Mot. Dismiss 19–27.  Akter opposes dismissal.  Br. Opp'n, ECF No. 10.  The motion is ripe for review.

## II.

The Government moves to dismiss under Federal Rule of Civil Procedure Rules 12(b)(1) and 12(b)(6).  The former challenges the Court's jurisdiction.  Because federal courts have a limited purview, a 12(b)(1) motion asks whether a plaintiff has met her burden to show that the Constitution and Congress authorize the Court to hear the suit.  *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003).  The Court accepts the allegations of the complaint as true but is not limited to them; it may consider materials outside the pleadings as necessary to determine its jurisdiction.  *Jerome Stevens Pharms., Inc. v. Food & Drug Admin.*, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

The latter rule tests the legal sufficiency of a complaint.  To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The court must "accept the well-pleaded factual allegations of the

---

[1] Akter originally sued Anthony Blinken, in his official capacity as Secretary of State, and Merrick B. Garland, in his official capacity as Attorney General.  Under Federal Rule of Civil Procedure 25(d), Secretary Marco Rubio and Attorney General Pam Bondi are automatically substituted for their predecessors in office.  Akter also sues Richard Visek, the Principal Deputy Legal Adviser of the Office of the Legal Adviser of the Department of State, and Julie Stufft, the Deputy Assistant Secretary for Visa Services, Bureau of Consular Affairs, in their official capacities.  Defendants are collectively called "the Government" here.

complaint as true and draw all reasonable inferences from those allegations in the plaintiff's favor." *Hurd v. District of Columbia*, 864 F.3d 671, 678 (D.C. Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678).

### III.

Akter has failed to state a claim for unreasonable delay. So the Court will grant the Government's motion to dismiss.

Claims of unreasonable delay of agency action are considered under two frameworks: the Mandamus Act and the APA. *See* 28 U.S.C. § 1361 (granting district courts the jurisdiction to compel "any agency . . . to perform a duty owed to the plaintiff"); 5 U.S.C. § 706(1) (granting the reviewing court authority to "compel agency action unlawfully withheld or unreasonably delayed."). Akter's Complaint obliquely alludes to both. *See* Compl. Part IV ¶¶ 22, 23.

Start with mandamus—a rare remedy with rigorous prerequisites. Indeed, "[f]ew legal standards are more exacting than the requirements for invoking mandamus jurisdiction under § 1361." *Illinois v. Ferriero*, 60 F.4th 704, 714 (D.C. Cir. 2023). It is "drastic" and "extraordinary" and thus "hardly ever granted." *Ferriero*, 60 F.4th at 714 (quoting *In re Cheney*, 406 F.3d 723, 729 (D.C. Cir. 2005)). So it is often considered "an option of last resort." *Id.*

Clearly, then, a plaintiff seeking mandamus has high hurdles to surmount. Most relevant here, she must establish that the agency has violated "a crystal-clear legal duty." *In re Nat'l Nurses United*, 47 F.4th 746, 752 (D.C. Cir. 2022). The conception of this duty is "narrowly defined," limited to those that are "ministerial" and "peremptory." *In re Cheney*, 406 F.3d at 729; *United States ex rel. McLennan v. Wilbur*, 283 U.S. 414, 420 (1931). Mandamus-eligible duties must be "clear and indisputable." *Wilbur*, 283 U.S. at 420; *see also In re Bluewater*

*Network*, 234 F.3d 1305, 1315 (D.C. Cir. 2000) (mandamus is "reserved only for the most transparent violations of a clear duty to act").

A plaintiff must also show that she has "a clear and indisputable right to the particular relief sought against the federal official" and that she "has no adequate alternative remedy." *Ferriero*, 60 F.4th at 713.  "These three threshold requirements are jurisdictional; unless all are met, a court must dismiss the case for lack of jurisdiction." *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016).  But "because the existence of a legal duty owed to the plaintiff is critical to whether adjudicative power is present," "mandamus jurisdiction under § 1361 merges with the merits." 14 Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 3655 (4th ed. 2019); *In re Cheney*, 406 F.3d at 729.

Even if a plaintiff satisfies the threshold triad, a court will not grant mandamus relief in the absence of "compelling equitable grounds." *In re Medicare Reimbursement Litig.*, 414 F.3d 7, 10 (D.C. Cir. 2005).  The central question on the equities is "whether the agency's delay is so egregious as to warrant mandamus." *In re Core Commc'ns*, 531 F.3d 849, 855 (D.C. Cir. 2008).

For reviews of agency delay, the so-called *TRAC* factors guide the inquiry.  *In re Ctr. for Biological Diversity*, 53 F.4th 665, 670 (D.C. Cir. 2022) (citing *Telecommunications Research & Action Ctr. (TRAC) v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984)).  The Court considers:

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*TRAC*, 750 F.2d at 80.

The standard by which the Court reviews an agency delay claim under the APA is similar, though a bit less rigorous. *See Hamandi v. Chertoff*, 550 F. Supp. 2d 46, 53 (D.D.C. 2008). The tests share at least one threshold requirement: Akter must assert that an agency has "failed to take a discrete agency action that it is required to take." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004) (cleaned up). The merits are also governed by the *TRAC* factors. *See Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003).[2]

### A.

Start with the preliminary jurisdictional questions. The chief jurisdictional dispute here is whether the Government has violated a discrete, non-discretionary duty in failing to schedule Akter's visa interview. *See* Mot. Dismiss 10–19. Akter acknowledges that "no specific statute mandates the scheduling of visa interviews." Br. Opp'n 9; *see also Avagyan v. Blinken*, No. 22-cv-2643 (CRC), 2022 WL 19762411, at *4 n.2 (D.D.C. Sept. 29, 2022) ("[F]or the reasons explained by several fellow courts in this district . . . the Department does not have a mandatory, nondiscretionary duty to interview them and adjudicate their applications."). Still, Akter argues that the agency has a duty to schedule her interview *within a reasonable time*. *See* Compl. Part IV ¶ 28. This mandamus-warranting duty allegedly stems from the APA, which specifies that agencies "shall proceed to conclude a matter presented to it" "[w]ith due regard for the

---

[2] Some courts have suggested that an APA remedy trumps a mandamus remedy, as mandamus is available only when there is no other adequate remedy. *See Hamandi*, 550 F. Supp. 2d at 53 ("Because the Court finds that it has jurisdiction over USCIS pursuant to . . . the APA, it need not reach the question of whether mandamus is available to compel action by the agency on plaintiff's application."). But the APA itself only authorizes judicial review of final agency action "for which there is no other adequate remedy in a court." 5 U.S.C. § 704. It is unclear which takes precedence. Either way, though, a plaintiff need not show she has a "clear and indisputable right to relief" to challenge unreasonable agency delay under the APA. *Ferriero*, 60 F.4th at 714. Thus mandamus remains more demanding to that extent.

convenience and necessity of the parties or their representatives and within a reasonable time." 5 U.S.C. § 555(b); Compl. Part II ¶ 9.

The D.C. Circuit recently considered whether § 555(b) "places a clear, non-discretionary duty" on consular officers to re-adjudicate applications that were refused but kept in administrative processing, meaning the agency retained the right to change its mind about the refusal later if circumstances shifted.  *See Karimova v. Abate*, 2024 WL 3517852, at *2–3 (D.C. Cir. July 24, 2024) (per curiam).  The court concluded that "Section § 555(b) does no such thing."  *Id.* at *3.  It stressed that the provision "simply expresses a congressional view that agencies should act within reasonable time frames" and is a mere "statement of general, good-governance principles."  *Id.* at *3, *4 (cleaned up) (citing *Attorney General's Manual on the Administrative Procedure Act* 65 (1947)).  The provision's "non-specific directive to all agencies to 'proceed to conclude a matter' within a 'reasonable time' and with 'due regard' to the parties leaves officials ample room for judgment based on the circumstances."  *Id.* at *3 (quoting 5 U.S.C. § 555(b)).  Thus, according to the panel, "[i]t does not plainly define and place upon consular officers a crystal-clear legal duty after they have adjudicated a visa application to then forgo any potentially beneficial follow-on administrative processing."  *Id.* (cleaned up).

The Government argues that *Karimova* binds this Court and demands dismissal of Akter's Complaint.  Mot. Dismiss 12–13; Reply Br., ECF No. 11, at 3–5.  The Court disagrees.  While *Karimova* may be persuasive, it is not controlling precedent.  D.C. Circuit Rule 36(e)(2) explains that "a panel's decision to issue an unpublished disposition means that the panel sees no precedential value in that disposition."  So unpublished opinions do "not strictly bind panels" of the D.C. Circuit; they "may be considered persuasive authority, but they do not constrain a panel of the court from reaching a contrary conclusion in a published opinion after full consideration of

the issue." *In re Grant*, 635 F.3d 1227, 1232 (D.C. Cir. 2011).  "And because the panel issuing such a disposition must unanimously agree that it does not 'alter, modify, or significantly clarify a rule of law,' these decisions are frequently announced in a way that makes them not 'suitable for governing future cases.'"  *Id.* (cleaned up) (first quoting D.C. Cir. R. 36(e)(2), and then quoting *Hart v. Massanari*, 266 F.3d 1155, 1178 (9th Cir.2001)).

The Government acknowledges that unpublished opinions do not bind subsequent panels of the appellate court.  Reply Br. 5.  But it contends that *subordinate* courts are still obligated to follow them.  *Id*.  It does not cite any support for this Solomonic proposition.  And it is clear why it cannot.  If an opinion has intentionally disclaimed precedential value, that disclaimer would attach to the opinion, not to the court considering the opinion.  *See Gunner v. Welch*, 749 F.3d 511, 515 (6th Cir. 2014) (district court erred in, *inter alia*, relying on unpublished opinion as binding precedent); *Process & Indus. Devs. Ltd. v. Fed. Republic of Nigeria*, 506 F. Supp. 3d 1, 7 n.3 (D.D.C. 2020), *aff'd on other grounds*, 27 F.4th 771 (D.C. Cir. 2022) (noting that the court was not bound by an unpublished decision of the D.C. Circuit).

The Government makes much of a change in the D.C. Circuit rules at the turn of the century.  It points out that D.C. Circuit Rule 32.1(b)(1)(B) provides that "[a]ll unpublished orders or judgments of this court . . . entered on or after January 1, 2002, may be cited as precedent."  But this admittedly confusingly worded rule change did not alter the nonbinding nature of unpublished opinions.  *In re Grant*, 635 F.3d at 1232 (describing the rule change and concluding that "unpublished orders or opinions do not have binding precedential effect.").  Instead, the rule change reversed a policy prohibiting litigants from citing unpublished dispositions *at all*.  *See* 16AA Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 3978.10 (5th ed. 2019); *Head v. Wilson*, 792 F.3d 102, 110 n.9 (D.C. Cir. 2015).  So, in short: unpublished

8

dispositions can be cited by litigants now. But they are not binding—on panels of the appellate court, or on this Court. Instead, they are persuasive authority. *Accord Haeri Mehneh v. Blinken*, No. 1:24-cv-1374-ZMF, 2024 WL 5116521, at *5–6 (D.D.C. Dec. 16, 2024) ("This Court joins others in finding *Karimova* nonbinding."); *but see Ibrahim v. Spera*, 2024 WL 4103702, at *3 (D.D.C. Sept. 6, 2024) ("This Court is bound to follow [*Karimova*]…. [T]he Court is unaware of any authority it might have to review or disregard a decision issued by an appellate court.").

More, while *Karimova* is a useful guidepost, it is not directly on point here. *Karimova* presented a distinct factual context. Its holding is limited to finding that § 555(b) does not "place[] a clear, non-discretionary duty on [the] consular officer to re-adjudicate [plaintiff's] already-refused application and, this time, to do it without subsequently retaining the application in case circumstances change in [plaintiff's] favor." *Karimova*, 2024 WL 3517852, at *3. In other words, the *Karimova* panel found that § 555(b) did not create a clear duty for a consular officer to reopen an already-closed adjudication, and to do so in a reasonable time. *See id* at *3-4. ("Karimova's 'matter' has already been 'concluded.'") (quoting 5 U.S.C. § 555(b)). It is unclear whether the same conclusion obtains when considering whether § 555(b) creates a clear duty for a consular officer to resolve a visa adjudication that is actively ongoing.

The Court opts to remain on the shores of this swamp. The D.C. Circuit has instructed lower courts to proceed to the merits "where doing so ma[kes] it possible to avoid a doubtful issue of statutory jurisdiction." *Kramer v. Gates*, 481 F.3d 788, 791 (D.C. Cir. 2007); *accord Janay v. Blinken*, 743 F. Supp. 3d 96, 113 (D.D.C. 2024). The requirement of a clear, nondiscretionary duty is rooted in the Mandamus Act, not Article III. *See In re Medicare Reimbursement Litig.*, 414 F.3d at 10 (grounding the jurisdictional requirements in the Mandamus Act rather than Article III); *City of Milwaukee v. Saxbe*, 546 F.2d 693, 701 (7th Cir.

9

1976) (same); *McGaw v. Farrow*, 472 F.2d 952, 956 (4th Cir. 1973) (same). So rather than wade into the murk, the Court turns to the merits.

### B.

As discussed, the merits of an unreasonable delay of agency action claim are governed by the *TRAC* factors. *TRAC*, 750 F.2d at 80. These factors are often grouped as follows. First, "is there any rhyme or reason—congressionally prescribed or otherwise—for an agency's delay (factors one and two)?" *Sawahreh v. United States Dep't of State*, 630 F. Supp. 3d 155, 161 (D.D.C. 2022) (cleaned up). Second, "what are the consequences of delay if the Court does not compel the agency to act (factors three and five)?" *Id.* Third, "how might forcing the agency to act thwart its ability to address other priorities (factor four)?" *Id.* And last, "is the delay intentional or due to any impropriety on the part of the agency (factor six)?" *Id.*

Start with the first two considerations. Akter protests that she has been made to endure a 13-month delay between her documentary completion and the filing of her mandamus petition. Br. Opp'n 30; *see also Barazandeh v. Dep't of State*, No. 23-cv-1581 (BAH), 2024 WL 341166, at *7 n. 7 (D.D.C. Jan. 30, 2024) ("The proper method for calculating delay []is the length of time between the last action the government took on a visa application and the filing of plaintiff's complaint."). But an extended wait alone is usually insufficient to show that the agency does not follow a rule of reason. *See Da Costa v. Immigr. Inv. Program*, 80 F.4th 330, 342 (D.C. Cir. 2023) (rejecting claim that a delay of four-and-a-half years was per se unreasonable). And "Congress has given the agencies wide discretion in the area of immigration processing." *Skalka v. Kelly*, 246 F. Supp. 3d 147, 153–54 (D.D.C. 2017). Courts should hesitate to interfere with an agency's discretion over how to allocate its resources. *See In re Barr Lab'ys., Inc.*, 930 F.2d 72, 76 (D.C. Cir. 1991).

This does not mean, however, that an agency can simply point to its broad discretion and excuse any length of delay; it still must show that there is some sort of processing rationale being followed. *See, e.g.*, *Ahmed v. Blinken*, 759 F. Supp. 3d 1, 13 (D.D.C. 2024) (deciding that a plaintiff could survive a motion to dismiss when the agency admitted that there was no processing queue). Here, the Government points to just that rationale. Once a visa application is deemed documentarily complete, interviews are scheduled according to the date of submission and the consulate's availability. *See* 9 FAM 504.4-6a. Courts in this district have regularly found that such a first-in, first-out methodology is a "rule of reason." *See L'Association des Americains Accidentels v. Dep't of State*, 633 F. Supp. 3d 74, 82 (D.D.C. 2022).

And a 13-month delay under a first-in, first-out approach is not unreasonable. "Courts of this jurisdiction often look to the length of delay as a rough yardstick to determine whether [a first-in, first-out rule] is, in fact, being applied." *Quiros v. Amador*, 715 F. Supp. 3d 31, 41 (D.D.C. 2023), *aff'd sub nom. Karimova*, 2024 WL 3517852. A delay of just over a year is shorter than those that courts have found reasonable in similar circumstances. *See id.* (collecting cases). The first two *TRAC* factors favor the Government.

Moving to factors three and five, which consider the nature of the interests prejudiced by the delay, including impacts on human welfare. Akter alleges worsening conditions in Bangladesh that threaten the safety and education of her children and exacerbate the stress her husband faces at work. Compl. ¶ 9. The prolonged delay has caused Akter "significant emotional, physical, and psychological distress." Compl. ¶ 10. Courts in this district have found that similar allegations skew these factors in the plaintiff's favor, if only slightly. *Siddiqui v. Blinken*, 646 F. Supp. 3d 69, 77 (D.D.C. 2022). Still, "[a]ll applicants awaiting adjudication of a visa application experience some level of negative impact." *Id.* While "[t]he Court sympathizes

with [Akter] and her family's difficulties," "she is not alone" in experiencing them. *Dastagir v. Blinken*, 557 F. Supp. 3d 160, 168 (D.D.C. 2021). "Catapulting [Akter] to the front of the line" would come at the expense of others who shoulder equally taxing burdens. *Id.*

Now to the fourth factor, which looks at the costs that expediting this action would impose on the agency's other obligations. *TRAC*, 750 F.2d at 80. Under this factor, the Court should deny relief "where a judicial order putting [Akter] at the head of the queue" would "simply move[] all others back one space and produce[] no net gain." *In re Barr Lab'ys*, 930 F.2d at 75. That is precisely what Akter asks for here—a mandate to bump her to the front of the line. Compl. at 12 (asking the Court to "[c]ompel Defendants and those acting under them to take all appropriate action to schedule an interview and adjudicate Plaintiff's documentarily completed" application, "without further delay."). But the Court "ha[s] no basis for reordering agency priorities." *In re Barr Lab'ys, Inc.*, 930 F.2d at 76. So this factor not only supports the Government—it compels dismissal on its own. *See Mashpee*, 336 F.3d at 1100–01.

Moving finally to the sixth factor, which reminds courts that they "need not find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed.'" *TRAC*, 750 F.2d at 80. Akter does not allege any bad faith on behalf of the Government. So this factor is neutral. *Dastagir*, 557 F. Supp. 3d at 168.

\*\*\*

On balance, the *TRAC* factors show that the Government's delay is not "so egregious as to warrant mandamus." *In re Core Commc'ns, Inc.*, 531 F.3d at 855. So too do they suggest that adjudication on Akter's position was not "unreasonably delayed." 5 U.S.C. 706(1). Indeed, a delay of a year or so in the visa mandamus context is rather brief. *See, e.g., Arab v. Blinken*, 600 F. Supp. 3d 59, 69–71 (D.D.C. 2022) (ruling that a 30-month delay was not unreasonable); *Da*

*Costa v. Immigr. Inv. Program Off.*, 643 F. Supp. 3d 1, 14 (D.D.C. 2022), *aff'd*, 80 F.4th 330 (D.C. Cir. 2023) (holding that a 27-month delay did not "cross the line from reasonable to unreasonable."). Akter's Complaint accordingly fails to state a claim upon which relief can be granted.

## IV.

For those reasons, the Government's motion to dismiss will be granted. A separate order will issue today.

Dated: July 16, 2025                                      TREVOR N. McFADDEN, U.S.D.J.

13